ROBERT W. RICHMAN (for whom has been substituted John C. MARSH), complainant-respondent,

*v.*

ALBERT T. BAUERLÆ et al., defendants-appellants.

[Submitted February term, 1934.   Decided May 4th, 1934.]

On appeal from a decree of the court of chancery, in which Vice-Chancellor Sooy filed the following opinion:

"The bill to foreclose in this case was filed on April 14th, 1931, at which time Robert W. Richman was named as complainant, but it appearing at final hearing that the real owner of the mortgage in suit was John C. Marsh, an amendment was permitted making Marsh the complainant.

"Complainant named as defendants in the bill of complaint the children of Elizabeth M. Kuehn.

"The mortgage under foreclosure was originally executed by Elizabeth M. Kuehn, who died either in 1925 or 1926, leaving her surviving three children, Walter H. Kuehn, Elsie K. Bauer and Marcia E. Kuehn-Stewart, and under the terms of Mrs. Kuehn's will, these children were bequeathed two purchase-money mortgages hereinafter set forth. In addition to these defendants, Albert T. Bauerle and Helene C. Bauerle were named, they having been subsequent purchasers of the equity of redemption in the mortgaged premises.

"The situation, as adduced by the evidence, disclosed that the mortgage in suit was executed by Elizabeth M. Kuehn on September 12th, 1923, in the sum of $15,000 and by several assignments, came to complainant, John C. Marsh.

"On August 1st, 1925, Elizabeth M. Kuehn conveyed the property to Albert T. Bauerle and on the same date, Bauerle, through a 'strawman,' conveyed to his wife, Helene C. Bauerle.

"When Mrs. Kuehn conveyed to Bauerle, she took back two purchase-money mortgages, one in the sum of $20,000, a second mortgage, and one in the sum of $2,500, a third mortgage.

"The deed of conveyance from Kuehn to Bauerle expressly declared that the conveyance was subject to the first $15,000

mortgage aforesaid and the two purchase-money mortgages also recited that they were subject to the $15,000 mortgage aforesaid.

"Thereafter, the Bauerles created a $10,000 mortgage in favor of one Ada B. Massing, with which mortgage I am not now concerned.

"The children of Elizabeth M. Kuehn answered the bill of complaint, setting up that when their deceased mother had executed the bond and mortgage in question, she had only received $13,500 and the mortgagee therein named, William F. Shriver, had received a bonus of $1,500, and it was agreed at the final hearing that the extent to which their answer should be held to go was a credit of this $1,500 bonus, together with interest thereon against the principal of the mortgage, provided the court found that the defendants were not estopped from asserting that defense.

"The Bauerles set up, by way of defense, the payment of a bonus of $500 to Mr. Shriver by the Bauerles, after they had purchased the property from Mrs. Kuehn, the bonus having been given in consideration of the extension of the due date of the mortgage, and the Bauerles also claim a further credit of $250 paid on account.

"It is undisputed that the $1,500 bonus was, in fact, received by Shriver, as well as the $500 bonus, and that the $250 should be credited on account of the bonus. Complainant, however, says that the Kuehns are not entitled to assert the $1,500 bonus defense, because Elizabeth M. Kuehn, if living, would be estopped from asserting it, and her children, holding under her, are also estopped.

"The claim of estoppel on the part of complainant arises out of the events which succeeded the execution and delivery of the mortgage in suit, as follows:

"(1) The agreement of sale covering the mortgaged premises, between Elizabeth M. Kuehn and Albert T. Bauerle, provided for an allowance in the purchase price of the 'mortgage for $15,000 now held by William F. Shriver, due September 12th, 1926.'

"(2) The deed from Elizabeth M. Kuehn to Albert T. Bauerle conveyed the premises 'under and subject to a certain mortgage of $15,000.'

"(3) On August 1st, 1925, Bauerle and his wife gave back a purchase-money mortgage to Mrs. Kuehn for $20,000 and in this mortgage it was expressly stated that it was subject to a certain mortgage of $15,000, and it was further provided that 'the said mortgagee hereby agrees that should it be necessary to replace the first mortgage of $15,000 before this mortgage becomes due hereunder, to allow and permit her second mortgage to become a second and subsequent lien to the new first mortgage when created, provided said new first mortgage does not exceed the sum of $15,000.'

"(4) On August 1st, 1925, Bauerle and his wife also gave a mortgage on the mortgaged premises to Mrs. Kuehn, being a third mortgage, for $2,500, and in this mortgage it was provided that the same was 'under and subject to a certain mortgage of $15,000.'

"(5) By deed dated October 31st, 1925, Bauerle and his wife conveyed the mortgaged premises to Ada B. Massing who, in return, conveyed to Mrs. Bauerle. In this deed it was recited that the conveyance was made 'under and subject to certain mortgages aggregating $37,500.'

"It is contended that when Mrs. Kuehn conveyed to Bauerle, expressly subject to the $15,000 mortgage, knowing the deed containing such recital would go on record, and when she entered into the contract for sale with Bauerle, which she also knew would go on record, wherein she agreed to convey expressly subject to the $15,000 mortgage; when she took from Bauerle the two purchase-money mortgages with covenants therein for refinancing, subject to the $15,000 mortgage, she ratified the first mortgage as an obligation for $15,000 and estopped herself, as the holder of said purchase-money mortgages, from any plea that might or would result in her or those claiming under her from getting credit for the $1,500 bonus and from asserting that there was less than $15,000 due on the mortgage. It is unquestionably clear that the three Kuehn children, as representatives of their

deceased mother, have all the defenses against the mortgage in suit that she would have had, if living, and equally clear that she would have been entitled to have answered the foreclosure suit by setting up usury as a defense.

"The Kuehn children have not seen fit to insist on the statutory defense of usury, but have set up the payment of a bonus by Mrs. Kuehn to Mr. Shriver and Mr. Bauerle, the mortgagees, and are entitled to a credit under the case of *Dunlap* v. *Chenoweth, 88 N. J. Eq. 496; affirmed, 90 N. J. Eq. 601,* unless they are estopped as alleged by complainant. It seems to me as between the Bauerles and Mrs. Kuehn, the recitals in the agreement, conveyance and mortgages aforesaid contained nothing but the true status of the $15,000 mortgage as between Mrs. Kuehn and the Bauerles and, surely, it was not incumbent on Mrs. Kuehn to set forth in those recitals that the conveyance or the mortgages were subject to a $15,000 mortgage held by Shriver, against which she had the defense of usury. When Marsh purchased, he could have made inquiry as to the amount due and, had the heirs of Mrs. Kuehn failed to disclose the present defense as to the $1,500 bonus they would have been estopped from now asserting it, but the mere recital in the deed and two mortgages of the existence of the $15,000 mortgage did not estop them any more than they would be estopped if, during the lifetime of Mrs. Kuehn, she had paid $1,500 on account of principal.

"Complainant urges as authority for the estoppel against the heirs of Mrs. Kuehn, *Lee* v. *Kirkpatrick, 14 N. J. Eq. 264,* and *Bush* v. *Cushman, 27 N. J. Eq. 131,* but neither of these cases are in point. They are authority for this proposition of law:

" 'As a general rule, the assignee of a mortgage takes the mortgage subject to all the equities subsisting against it in the hands of the original mortgagee. But if the mortgagor when applied to for information, misleads the assignee as to the amount due, or conceals his equitable defense, or stands silently by and permits the assignee in good faith to pay his money, and take an assignment for its full nominal value,

he cannot afterwards set up his equitable defense against the claim of the assignee for the payment of the entire debt.'

"But in the case *sub judice,* Marsh never applied to the mortgagor, Mrs. Kuehn, or to her representatives, nor is there any evidence to support any finding that these defendants or their mother ever did anything to mislead Marsh. On the other hand, it is quite apparent from a view of the whole range of evidence that what happened was this: Marsh owned the adjoining land and had erected a building on that land which encroached on the Bauerle property, and he then purchased the Kuehn mortgage through a strawman and started foreclosure proceedings, with the idea of purchasing at the foreclosure sale, thereby eliminating the trouble with respect to the encroachment on the division line.

"Mrs. Kuehn did not die until 1925 or 1926, and the assignments of record are as follows:

Shriver to Gardiner—February 6th, 1931.

Gardiner to Liberty Title and Trust Co.—February 6th, 1931.

Liberty Title and Trust Co. to Richman—April 7th, 1931.

Richman to Marsh—December 1st, 1931.

"Foreclosure was started April 13th, 1931, and Marsh did not disclose his identity as complainant until after final hearing had been in progress for sometime, and was then substituted as complainant.

"Marsh was anxious to secure the mortgage for his own ends, and blinded by that, failed to make inquiries which, if made, would have disclosed the $1,500 bonus payment, and the Kuehns are not estopped, and all that Marsh took by his assignment was the mortgage, subject to all the equities existing against it in the hands of the original mortgagee, and the mortgage, as assigned, was and is simply security for the amount actually advanced upon it, viz., $13,500.

"But it is said by complainant that Bauerle should not get the benefit of this credit of $1,500 because when Mrs. Kuehn conveyed to him he took credit for that sum by the

terms of the deed—'subject to a mortgage of $15,000.' As between Mrs. Kuehn and Bauerle, this is true, but the defense is good as to the heirs of Mrs. Kuehn to the end that the decree may not be operative to fix a greater liability on the bond than that which is due after deducting the bonus, and, as was said in *Ahrens* v. *Kelly, 89 N. J. Eq. 586,* 'it could scarcely be said that a decree for one amount could be entered,' as to the Kuehns, and 'another amount,' as to the Bauerles.

"In *Scull* v. *Idler, 79 N. J. Eq. 466,* Vice-Chancellor Leaming held as follows:

" 'This inability of one who purchases the mere equity of redemption to set up the defense of usury against the foreclosure of a mortgage subject to which the purchase was made, is not based upon the idea that the taint of usury has been purged by a conveyance in which the mortgagor has recognized the usurious mortgage as valid; the defense of usury may still be available to the mortgagor. It would seem that as between the original parties the taint of usury can only be removed by the borrower receiving the full amount called for by the security. *Taylor* v. *Morris, 22 N. J. Eq. 606; Warwick* v. *Dawes, 26 N. J. Eq. 548; Trusdell* v. *Dowden, 47 N. J. Eq. 396.* It necessarily follows that the original mortgagor, notwithstanding his conveyance subject to the mortgage, is still entitled to be protected against liability on his bond in the event of a deficiency at sale; and if such mortgagor is made a party to a foreclosure suit against his vendee, the decree will be operative as a bar to such defense on the bond, unless the defense is asserted by him in the foreclosure suit in which he is made a party. This is expressly held in *Andrews* v. *Stelle, 22 N. J. Eq. 478.'*

"Now, as to the defense of Bauerle as to the payment of the $500 bonus for the extension, it is conceded that he did pay this amount to Shriver for the extension which was granted by Shriver, and that the defendant Bauerle should have a credit for this sum and this credit, being a payment on account of principal, must inure to the benefit of the Kuehns, in so far as it reduces the decree, and it is also

admitted that a credit of $250, paid by Bauerle by way of interest, should be allowed.

"Another situation arose at the final hearing which was had before the late Vice-Chancellor Ingersoll which, it seems to me, prevents a sale of the mortgaged premises at this time, and that is this: The Bauerles, in their answer, set up that the complainant was indebted to them in the sum of $20,000 for the use and occupation of a part of the mortgaged premises, of which portion of said premises the complainant was in possession at the time of the final hearing. These defendants, also by way of counter-claim, asked that the bill of complaint be dismissed and that the defendants have a decree in their favor for the amount found to be due to them from the said Marsh by reason of his occupation of a portion of the premises aforesaid.

"It appeared at final hearing that a suit in ejectment had been instituted by the Bauerles against Marsh and was then pending in the Cape May county courts, but the vice-chancellor deemed it proper that the entire controversy be settled by decree of the court of chancery, and the encroachment by Marsh on the Bauerle property being admitted, the vice-chancellor, by consent of counsel, referred the question of damage by reason of the encroachment to a master, who reported back the amount that should be allowed therefor, whereupon, after overruling exceptions to the master's report, that finding by the master was affirmed, with the result that the defendant Bauerle has taken an appeal from this finding to the court of errors and appeals, and if the appeal should be sustained, the amount of complainant's decree will be unsettled until the question raised by the appeal has been determined, either in this court or a court of law.

"It would not seem to me to be equitable that the complainant should proceed to sale of the mortgaged premises with this uncertainty existing, but that there should be one decree in this case which will finally settle the amount due the complainant and the amount which must be paid at the sale by Marsh to protect the bond, and by the Bauerles to determine the amount they will have to pay to redeem the

mortgaged premises, so that at this time a final decree will not be entered."

*Mr. Irving I. Jacobs,* for the appellants.

*Messrs. Carr & Carroll,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Sooy in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.